# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DAVID G. NEILON,

        Appellant,

        v.

UNITED STATES POSTAL SERVICE,

        Agency.

DOCKET NUMBER
DA-0752-14-0081-I-1

DATE: January 21, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>W. Philip Jones</u>, Esquire, Avon, Connecticut, for the appellant.

<u>Lisa A. Stegall</u>, Esquire, and <u>Theresa M. Gegen</u>, Dallas, Texas, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which affirmed his reduction in grade for misconduct. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2          The agency demoted the appellant from an EAS-21 Postmaster position to an EAS-17 Supervisor, Customer Services position based on a single charge of Unacceptable Conduct with five specifications. Initial Appeal File (IAF), Tab 5 at 16-24. After affording the appellant his requested hearing, the administrative judge sustained the charge and found that: the agency did not violate the appellant's due process rights; the appellant did not prove his affirmative defenses of sex and age discrimination and harmful error; and the demotion penalty was reasonable. Initial Decision (ID) at 2-17.

¶3          Under the first specification, the agency alleged that the appellant allowed his employees to bring in and serve a cake with an inappropriate epithet aimed at a former employee written on it and then failed to address with employees this activity as being inappropriate. IAF, Tab 5 at 19. Based on his assessment of the witnesses' credibility, including the demeanor of the agency's witnesses, the administrative judge found that the agency proved the specification by preponderant evidence. ID at 4-5. On review, the appellant argues extensively that his testimony was truthful and the testimony of the agency's witnesses was not. Petition for Review (PFR) File, Tab 1 at 5-9. However, the Board has

limited discretion to disturb an administrative judge's credibility determinations, particularly where, as here, some of those findings rely explicitly on demeanor. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so); *see also Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009) (credibility determinations made after hearing live testimony must be deemed to be at least implicitly based on witness demeanor). The appellant has not offered sufficiently sound reasons to overturn the administrative judge's credibility findings. *See Haebe*, 288 F.3d at 1301.

¶4        The appellant also asserts on review that he was justified in not taking any action to "address this activity." Although he acknowledges that his supervisor instructed him to take some sort of action, the appellant alleges that the agency was conducting an investigation to determine whether the cake incident amounted to workplace harassment and the investigator instructed him to wait until the investigation was complete before disciplining the responsible employees. PFR File, Tab 1 at 6. The only evidence supporting the appellant's claim that the investigator told him not to take action is the appellant's own testimony. Although the investigator testified at the hearing and the appellant had an opportunity to elicit corroborating testimony, the appellant failed to ask him any questions that were relevant to the issue. Hearing Compact Disc (HCD), Disc 1 (Testimony of R.C.).

¶5        Under specification 2, the agency charged that, on June 12, 2013, the appellant reported that all mail had made dispatch when it had not, and on June 24, 2013, he did not report late mail or deliver any late mail to the mail processing plant, but he had late mail at his facility. IAF, Tab 5 at 20-22. The appellant admitted that he had unreported late mail on those 2 days but contended

that he was tired and it would have been unsafe for him to drive the late mail to the plant as required. The administrative judge, again based largely on credibility, found that the agency proved the specification by preponderant evidence. ID at 7-8.

¶6    On review, the appellant reiterates his argument below concerning the process by which the agency discovered that he had unreported late mail. PFR File, Tab 1 at 9-13. Specifically, he contends that the photocopies in the record of the pieces of late mail that are the subject of the specification were "mail covers"[2] under 39 C.F.R. § 233.3(c)(1), and had been obtained without the authorization of the Chief Postal Inspector as required by 39 C.F.R. § 233.3(g)(4). That regulation, however, concerns the agency's authority to use mail covers for law enforcement or national security purposes, and it defines "mail cover" narrowly so that only items that serve the purpose of the regulation are covered. We are not persuaded by the appellant's argument that the evidence used against him under specification 2 was illegally obtained.

¶7    Specification 3 reads, "Failing to accurately report when all carriers returned to office." IAF, Tab 5 at 22. The appellant was required to report to his supervisor when all the mail carriers had returned from delivering their routes, in part so the agency could confirm that its employees had returned safely from performing their duties. *Id.* The agency alleged that, on June 12, 2013, the appellant reported at 7:07 p.m. that three carriers were out when actually four were out. That same evening, he reported at 7:27 p.m. that all carriers had returned when in fact one carrier did not return until 8:01 p.m. The administrative judge noted that the appellant admitted committing the charged acts but asserted that the last carrier was in the process of returning when the appellant sent the last email and that he was very tired that day. ID at 8-9. The

---

[2]  The administrative judge addressed this issue as a harmful error claim and found it unproven. ID at 14-15. We see no error in his analysis or in his decision to address the issue as a matter of harmful error.

administrative judge found that that the record evidence was sufficient to prove this specification.  ID at 8-9.

¶8　　　On review, the appellant alleges that his reports were accurate according to the most recent clock ring reports available to him and that he would have no way of knowing if a carrier were still out without performing a visual inspection. PFR File, Tab 1 at 14.  Because it appears that the agency wanted accurate reports, performing the occasional visual inspection might have been necessary to perform this duty properly.  His argument is unpersuasive.

¶9　　　Under specification 4, "Reporting of inaccurate information-eTravel Reports," the agency charged that the appellant submitted a claim for mileage reimbursement for driving mail from his post office to the processing plant on June 13, 2013, when he had made no such trip on that date.  IAF, Tab 5 at 23. When this was brought to his attention, he changed the date to June 12, 2013, but he had made no trip to the plant on that day either.  *Id.*  The administrative judge found the appellant's explanation to be not credible especially given the facts underlying specification 2.  ID at 9-10.

¶10　　　On review, the appellant alleges that he merely made an understandable mistake.  PFR File, Tab 1 at 15.  However, he does not proffer a sufficiently sound reason to set aside the administrative judge's credibility findings.  *See Haebe*, 288 F.3d at 1301.

¶11　　　Under the last specification, "Failure to follow leave/timekeeping procedures," the agency charged that the appellant took off the week of May 6-10, 2013, without informing his supervisor and without submitting a leave slip so the timekeeper could record his time and attendance properly.  IAF, Tab 5 at 23.  As a result, his time was recorded as regular time and was not charged against his leave balance, which required the agency to expend funds later to effect a correction.  *Id.*  The appellant contended that he was not at work that week because he was relocating his family and he was authorized to approve up to 5 days of his own leave.  The administrative judge found that the appellant had

more flexibility than other employees in reporting his time and attendance, but he was still obligated to report his time and attendance accurately. ID at 10-11.

¶12     On review, the appellant asserts that he informed his supervisor when he accepted the position that he would have to return to his former residence to move his family, so she was aware he would be taking relocation leave and it was her responsibility to enter his leave on his time and attendance report. PFR File, Tab 1 at 16-17. He alleges that he receives his pay by direct deposit and implies that he could not have verified that his time had been reported accurately. *Id.* at 16-17. The supervisor confirmed that the appellant told her when he accepted the position that he could report immediately but he would have to take a week to relocate his family, but she testified that he never told her that he would be gone on the dates in question. HCD, Disc 1 (Testimony of K.V.). The appellant's implied argument, that the burden was on his supervisor to remember what he told her in a preselection discussion and that he had no responsibility to remind her when he would be gone or see that the timekeeper knew how to enter his time, is not reasonable. We agree with the administrative judge that the agency proved the fifth specification.

¶13     Turning to the appellant's affirmative defenses, the administrative judge found that the appellant introduced no evidence to support his bare allegations of sex and age discrimination, and he found that the appellant failed to prove his due process claim concerning whether he was permitted a predecisional review of all of the evidence upon which the agency relied. ID at 12-14. The appellant does not challenge the administrative judge's findings on review but instead raises new claims of alleged due process violations. PFR File, Tab 1 at 19. Not only are these new allegations not based on new and material evidence that was unavailable before the record closed below, they also pertain to whether the agency gave him complete notice of the topics that would be discussed during his investigatory interviews. *Id.* Those matters are not within the Board's purview.

¶14 The appellant also alleged that the agency erred by designating the same person to be both concurring official and deciding official in his case, thereby creating a conflict of interest. *See* PFR File, Tab 1 at 18. It is permissible for an individual to be both the proposing official and the deciding official in an action and this arrangement does not constitute either harmful error or a due process violation. *Martinez v. Department of Veterans Affairs*, 119 M.S.P.R. 37, ¶ 11 (2012). A deciding official's expressed predisposition contrary to the appellant's interests does not violate due process or constitute harmful error even if the deciding official had previously concurred in the desirability of taking the adverse action against the appellant. *Id.* The administrative judge correctly found that the appellant did not prove a due process violation or harmful error. ID at 13-14.

¶15 Finally, the appellant argues that the penalty of demotion from Postmaster to a lower-graded supervisory position is excessive. PFR File, Tab 1 at 18. Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *See Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.* However, if the deciding official failed to appropriately

consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

¶16     The deciding official testified that he considered the appellant's years of satisfactory service with no disciplinary record but found that the seriousness of the misconduct outweighed these factors. HCD, Disc 1 (Testimony of H.B.). The deciding official found that the paramount factor in arriving at the penalty of demotion was that the appellant's misconduct indicated that the appellant functioned poorly in a position where he had no direct supervision,[3] and had to be placed in a position where he could be supervised, which led him to demote the appellant to a subordinate supervisory position. *Id.* The administrative judge found, and we agree, that the penalty selected by the agency is within the tolerable bounds of reasonableness and promotes the efficiency of the service.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

---

[3]  The principle that supervisors and those with fiduciary responsibilities are held to higher standards of conduct applies to postmasters inasmuch as they are both. *See Stack v. U.S. Postal Service*, 101 M.S.P.R. 487, ¶ 9 (2006); *see also Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 25 (2001); ID at 16.

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.